UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

LARRY DALE CROUCH, *et al.*,                                              PLAINTIFFS

and

KENTUCKY ASSOCIATED GENERAL CONTRACTORS
SELF-INSURANCE FUND,                                    INTERVENING PLAINTIFF

v.                                                      CIVIL ACTION NO. 3:07-CV-638-S

HONEYWELL INTERNATIONAL, INC., *et al.*,                                  DEFENDANTS

## MEMORANDUM OPINION

On November 21, 2006, Larry Dale Crouch took off in a Piper PA-32RT-300 from the Mayfield-Graves County Airport in Mayfield Kentucky, with Teddy Lee Hudson in the passenger seat. The aircraft was bound for the Capital City Airport in Frankfort, Kentucky, but suddenly lost all engine power. Crouch was forced to crash-land in a field near Bardstown, Kentucky, and both he and Hudson suffered serious injuries. They have sued various entities allegedly responsible for the design, manufacture, and maintenance of the airplane.

Two of the defendants have moved to dismiss the case against them for lack of personal jurisdiction, evidently with an eye towards keeping this litigation in their home states. John Jewell Aircraft, Inc. ("Jewell Aircraft" or "Jewell") is a Mississippi corporation with its sole place of business in Holly Springs, Mississippi. It performed an overhaul of the engine of the airplane in question in Holly Springs, after which a Jewell Aircraft employee flew the plane to Kentucky for delivery to its owner. Teledyne Continental Motors, Inc. ("Teledyne") is a Delaware corporation with its principal place of business in Alabama. It manufactures and sells aircraft parts, but has no

customers in Kentucky. Its products include magnetos,[1] one of which was sold and shipped to a customer in Mississippi and eventually installed on the aircraft that is the genesis of this litigation. Each of these defendants argues that it lacks sufficient connections to Kentucky to be subject to jurisdiction here.

Before turning to the particulars of the parties to this action, we pause to set out some basic principles of personal jurisdiction in the federal district courts. First, a district court can exercise jurisdiction over any person subject to the jurisdiction of the state in which it sits. *Kerry Steel, Inc. v. Paragon Indus.*, 106 F.3d 147, 148 (6th Cir. 1997). Second, the Due Process Clause imposes limits on state-court personal jurisdiction, with which federal courts must also comply. *Id.* at 149. Although Kentucky law could restrict its courts' jurisdiction more severely than does the Constitution, its long-arm statute, KRS 454.210, has been interpreted as reaching outer limits of what federal law allows. *Cummings v. Pitman*, 239 S.W.3d 77, 84 (Ky. 2007). Consequently the statutory requirements have merged into the due process analysis. *Id.* at 84-85. Third:

> Personal jurisdiction comes in two flavors: "general" jurisdiction, which depends on a showing that the defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant, and "specific" jurisdiction, which exposes the defendant to suit in the forum state only on claims that "arise out of or relate to" a defendant's contacts with the forum.

*Id.* (*citing Helicopteros Nacionales de Colombia S.A., v. Hall*, 466 U.S. 408, 414-415 & nn.8-10 (1984); *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989), *cert. denied*, 493 U.S. 1058 (1990)). In all questions of personal jurisdiction, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum

---

[1] A small electrical generator that uses permanent magnets to create high-voltage pulses of current for ignition in an internal-combustion engine. The Oxford English Dictionary (2d ed. 1989), *available at* http://dictionary.oed.com/cgi/entry/00299543.

state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (*quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Plaintiffs allege that Jewell Aircraft is subject to Kentucky's specific personal jurisdiction, and that Teledyne is amenable to the Commonwealth's general jurisdiction.

## I.

There is no argument that Jewell Aircraft maintains sufficiently systematic contacts with Kentucky to justify the exercise of general jurisdiction. If we are to adjudicate the claim against Jewell, therefore, it must be on the basis of a single specific act, out of which the claim arose. The Sixth Circuit has established a three-pronged test for determining the existence of specific personal jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968) (*quoted in Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007)). This approach "simply applies in a specific fashion the broad rule requiring substantial minimum contacts as a basis for jurisdiction." *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 226 (6th Cir. 1972), *abrogated on other grounds by Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998). All three elements must be present; the absence of one will defeat jurisdiction. *Lak, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1303 (6th Cir. 1989).

The first factor has been described as the "sine qua non for in personam jurisdiction." *Air Prods.*, 503 F.3d at 550; *S. Mach. Co.*, 401 F.2d at 381-82. "This 'purposeful availment' requirement

ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts or of the 'unilateral activity of another party or third person.'" *Burger King*, 471 U.S. at 475 (citations omitted). "Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." *Id.* (citations omitted). Importantly, however, "physical presence in a forum state is not required, and the Supreme Court has 'consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.'" *Air Prods.*, 503 F.3d at 551 (*quoting Burger King*, 471 U.S. at 476).

Here, the plaintiffs argue that Jewell Aircraft fulfilled this first prong when, after the engine had been overhauled, its employee flew the plane from Mississippi back to Kentucky in order to deliver it to Crouch. This is a sufficient contact with Kentucky to justify jurisdiction. Jewell purposefully delivered a product to its customer, who resides in the Commonwealth and presumably does much of his flying in Kentucky airspace. Jewell's protestation that "the flight to Kentucky was not of Jewell's accord" is bunk. Jewell charged Crouch $250 for the service, and derived substantial benefits from offering it: Willingness to deliver planes aids in expanding Jewell's potential customer base to cities and states hundreds of miles away from Holly Springs, and it provides them a competitive advantage with respect to out-of-state customers by allowing them to avoid Mississippi sales tax. Crouch's plane (and the overhauled engine that Jewell installed in it) did not end up in Kentucky through random chance after simply being deposited into the stream of commerce. Jewell flew it into Kentucky, and accepted compensation for doing so. Jewell thus purposefully availed itself of the benefits of doing business in Kentucky, and its acts fulfill the first prong of the *Southern Machine* test.

The second prong of the *Southern Machine* test "is satisfied 'when the operative facts of the controversy arise from the defendant's contacts with the state.'" *Intera Corp. v. Henderson*, 428 F.3d 605, 617 (6th Cir. 2005) (*quoting Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000)). "The Sixth Circuit has articulated the standard for this prong in a number of different ways, such as whether the cause of action was 'made possible by' or 'lie[s] in the wake of' the defendant's contacts, or whether the cause of action is 'related to' or 'connected with' the defendant's contacts with the forum state." *Eastman Outdoors, Inc. v. Serene Innovations, Inc.*, 2008 U.S. Dist. LEXIS 29741 ( E.D. Mich. Apr. 11, 2008) (*quoting Lanier v. American Bd. of Endodontics*, 843 F.2d 901, 909 (6th Cir. 1988); *Youn v. Track, Inc.*, 324 F.3d 409, 419 (6th Cir. 2003)) This standard is a lenient one; the cause of action need not "formally" arise from the defendant's contacts. *Air Prods.*, 503 F.3d at 553. "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contract." *S. Mach. Co.*, 401 F.2d at 384 n.29 (*quoted in Calphalon*, 228 F.3d at 723-24). With all this in mind we have no trouble finding that a plane crash occurring in Kentucky is "related to," and therefore "arose from," Jewell's delivery of an allegedly defective airplane to a Kentucky buyer at a Kentucky airport. It is immaterial that the repair work was performed in Mississippi: By flying the aircraft to Kentucky, Jewell did business in the state, and as a result the plaintiff allegedly suffered injury.

This would be a different case if Crouch had flown the plane to Mississippi and picked it up himself. It would look much like *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) (finding no personal jurisdiction over a non-resident car dealer where the buyer had unilaterally transported the vehicle to Oklahoma). Here, however, the defendant delivered the allegedly defective product directly to the plaintiff in the forum state. After visiting the state and deriving substantial

benefits from having done so, Jewell Aircraft cannot avoid the jurisdictional consequences of its actions.

Because we have found that the first two elements of the *Southern Machine* test are met, we can infer that the exercise of jurisdiction would be reasonable. *Aristech Chem. Int'l v. Acrylic Fabricators*, 138 F.3d 624, 628 (6th Cir. 1998) (Where the first two prongs have been fulfilled, "only the unusual case will not meet [the] third criterion." (*citing Theunissen v. Matthews*, 935 F.2d 1454, 1461 (6th Cir. 1991))); *CompuServe, Inc. v. Patterson* 89 F.3d 1257, 1268 (1996); *S. Mach. Co.*, 401 F.2d at 384. Determining whether the exercise of jurisdiction is reasonable in a given case is a matter of balancing four factors: (1) the burden on the defendant; (2) the interests of the forum State; (3) the plaintiff's interest in obtaining relief; and (4) the interests of other States in securing the most efficient resolution of the controversy. *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 113 (1987); *Youn*, 324 F.3d at 419; *Compuserve*, 89 F.3d at 1268; *Theunissen*, 935 F.2d at 1461. Although forcing the defendants to travel from Mississippi would burden them, the Supreme Court has instructed us that "when minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi*, 480 U.S. at 114. One side is going to have to travel between Mississippi and Kentucky in this dispute regardless of where it is litigated, and the Sixth Circuit has upheld specific jurisdiction even where the result was to force the defendant to travel. *See*, *e.g.*, *Lanier*, 843 F.2d at 911-12 (upholding jurisdiction in Michigan over a Illinois defendant); *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170-71 (6th Cir. 1988) (upholding jurisdiction in Michigan over a California defendant). Kentucky has strong interests in applying its law to provide justice to its injured citizens, and the plaintiffs have strong interests in trying the case here. It is also

relevant that, should we refuse jurisdiction, the case against Jewell would have to be tried separately in another forum, rather than as a single unit. Such piecemeal litigation is less than ideal; seeking to avoid it is reasonable. Mississippi of course has some interest in litigating a case involving work performed there, but in the face of the other three factors this interest is not sufficient to render Kentucky jurisdiction unreasonable.

Accordingly, we hold that Kentucky jurisdiction over Jewell Aircraft is proper, and its motion to dismiss will be denied.

## II.

With respect to Teledyne, the plaintiffs make no claim of specific jurisdiction. Instead, they assert that Teledyne is subject to Kentucky jurisdiction on the basis of its continuous and systematic contacts with the state. Both parties refer us to the *Southern Machine* test discussed above, and would have us apply it here. Both parties are in error. The *Southern Machine* test applies only in cases of specific jurisdiction; that much should be clear from its second prong, which makes reference to the particular cause of action involved. As the Fifth Circuit has explained:

> Unlike the specific jurisdiction analysis, which focuses on the cause of action, the defendant and the forum, a general jurisdiction inquiry is dispute blind, the sole focus being on whether there are continuous and systematic contacts between the defendant and the forum. Due process requires that "continuous and systematic" contacts exist between the State and the foreign corporation to exercise general personal jurisdiction because the forum state does not have an interest in the cause of action.

*Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 339 (5th Cir. 1999) (*citing Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414-16 (1984); Mary Twitchell, The Myth of General Jurisdiction, 101 Harv. L. Rev. 610 (1988)). For that reason, courts assessing claims of general jurisdiction should consider the defendant's connections with the forum state leading up to

the accrual of the cause of action, rather than just those contacts related to the case at hand. *See* 4 Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1067.5 (3d ed. 2002). "General jurisdiction is proper only where 'a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.'" *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002) (*quoting Third Nat'l Bank v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)). It is more difficult to get into court on the basis of general jurisdiction than on specific jurisdiction; leading commentators have described the threshold for general jurisdiction as "very substantial" and "quite rigorous." 4 Wright & Miller, *supra*, at § 1067.5.

Because there is no test for general jurisdiction that is comparable to the three-pronged *Southern Machine* inquiry, we proceed by analogy. In *Helicopteros*, the leading Supreme Court general jurisdiction case, the Court held that the Colombian defendant had not maintained sufficient contact with Texas to allow the state court to exercise general personal jurisdiction over it. 466 U.S. at 418-19. This was true despite several arguably substantial connections with the would-be forum state: the defendant had negotiated a contract (unrelated to the tort action that was before the Court) in Texas; had accepted checks drawn on a Texas bank; had purchased nearly 80% of its fleet of helicopters as well as other spare parts and accessories in Texas; and had sent pilots to Texas for training. *Id.* at 411, 416.

Teledyne's connections to this forum are more tenuous than those that were found insufficient in *Helicopteros*. The company has no office in Kentucky, is not licensed to do business here, has no Kentucky bank account, and has no Kentucky-based employees. Indeed, there is no allegation that anyone associated with Teledyne has ever visited Kentucky. Plaintiffs cite three

forms of conduct as justifying the exercise of general personal jurisdiction: its "Aviator Services" program, which provides customers with bulletins, catalogs, and other material relating to the maintenance of Teledyne engines; "TCMLink," a service that provides access to online parts books and manuals; and Teledyne's purchase of advertisements in several national publications. Teledyne evidently offers the "Aviation Services" and "TCMLink" programs primarily through its public website. Between them, the two services have approximately 200 customers in Kentucky. But the Sixth Circuit has concluded that "the fact that [the defendant] maintains a website that is accessible to anyone over the Internet is insufficient to justify general jurisdiction." *Bird*, 289 F.3d at 874 (*citing Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419-20 (9th Cir. 1997)). This was true in *Bird* even where 4,666 Ohio residents had registered domain names through the defendant's website. *Id.* The fact that a website enables a company to do business with a state's residents is insufficient on its own to permit general jurisdiction. *Id.* And if that is the case, then buying ad space in a national publication cannot possibly be a sufficient contact. A magazine advertisement lacks the element of interactive communication that is the hallmark of the Web, and any direct contact between buyer and seller must be initiated by the customer. There is simply nothing here that is sufficiently substantial, continuous, and systematic to justify the exercise of jurisdiction over Teledyne in a case not arising out of its meager connections to the Commonwealth. The claims against Teledyne must therefore be dismissed from this Court for lack of personal jurisdiction.

That dismissal will be without prejudice, in order to allow the plaintiffs to re-file in a court of competent jurisdiction. Plaintiffs ask, in their brief, that we instead transfer the case to another District Court pursuant to 28 U.S.C. § 1406(a). This would require us hold a hearing to determine which venue is most appropriate, because the plaintiffs have not to this point provided any evidence

or argument as to what other court might have jurisdiction. It is ordinarily not the court's task to perform the plaintiff's jurisdictional discovery, and given the state of our civil docket holding a hearing would only result in further delay in getting the case into the right court. The plaintiffs have shown us no reason why they are incapable of determining on their own where to re-file, and we therefore do not think that "the interest of justice" requires us to do their work for them. 28 U.S.C. § 1406(a). Therefore in the exercise of our "sound discretion," we opt to dismiss the case without prejudice rather than to transfer it. *First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 262 (6th Cir. 1998).

\* \* \*

The Court will issue a separate Order in accordance with this Opinion.

Charles R. Simpson III, Judge
United States District Court