UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO.  3:07-CV-638-DJH-CHL

LARRY CROUCH, et al.,                                                     Plaintiffs,

v.

JOHN JEWELL AIRCRAFT, INC.,                                       Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is a Motion to Preclude Certain Testimony and Opinions of Scott Goodley ("Motion to Preclude") (DN 412) filed by plaintiffs Larry Crouch, Rhonda Crouch, Teddy Hudson, and Carolyn Hudson.  In the Motion to Preclude, plaintiffs seek to prohibit defendant John Jewell Aircraft, Inc. ("JJA") from offering certain expert testimony through Scott Goodley.  JJA has filed a response to the motion, and plaintiffs have filed a reply.  (DN 436, 442.)  Thus, this motion is ripe for review.  For the following reasons, the Motion to Preclude is denied.

I.      BACKGROUND

This matter arises out of a plane crash that occurred on November 21, 2006 when Larry Crouch was operating a Piper aircraft en route from Mayfield, Kentucky to Frankfort, Kentucky. Teddy Hudson was a passenger in the aircraft.  As a result of this crash, Crouch and Hudson are now permanently disabled and confined to wheelchairs.  Plaintiffs filed their complaint in this Court on November 19, 2007 suing various parties.  On February 17, 2010, the claims by plaintiffs against one of the original defendants in this lawsuit, Teledyne Continental Motors, Inc. ("TCM"), were transferred to the United States District Court for the Southern District of

1

Alabama.  (DN 184.)  That action, which alleged that TCM designed and manufactured a defective dual magneto, was resolved on August 5, 2011, when a jury found for TCM on all counts.  That verdict has since been affirmed by the Court of Appeals for the Eleventh Circuit.  Meanwhile, the lawsuit in this Court continued to move forward.

At this stage, only plaintiffs, intervenor plaintiffs,[1] and JJA remain as parties, and trial has been set for April 11, 2016.  In the present action, plaintiffs allege that, in April 2005, JJA made a number of improper modifications to the plane's engine components.  According to plaintiffs, these modifications caused the engine to vibrate excessively, and these excessive vibrations in turn created fatigue fractures in the magneto flange. These fractures are said to have eventually caused the magneto to separate from the engine, causing a loss of power in the aircraft.

Plaintiffs seek to prohibit Goodley from testifying regarding "modification of the alignment pin holes between the crankcase and accessory case of the subject engine and resulting vibrations, or machining of the crankcase during the [aircraft engine] overhaul" conducted by JJA.  (DN 412-1, p. 1.)   Plaintiffs seek to preclude any such testimony on the basis that Goodley's report was "totally silent on the subjects of the enlargement of the alignment pin holes on the engine's crankcase, whether the enlargement of those pin holes by John Jewell caused excessive vibrations which led to the fatigue fractures of the magneto flanges, and modifications to the crankcase during the overhaul."  (*Id*. at 2.)  Plaintiffs state that, when asked about the alignment of the "pin holes" during his deposition, Goodley reaffirmed that he had no comments beyond his report.  (*Id*.)  Finally, plaintiffs assert that Goodley had access to the report of their

---

[1] An intervenor complaint was filed by Kentucky Associated General Contractors Self-Insurance Fund on April 28, 2008 (DN 79); another intervenor complaint was filed by Bridgefield Casualty Insurance Company on April 15, 2009 (DN 118).

expert, Mark Seader; that report discussed the enlargement of the pin holes between the crankcase and the accessory case and noted that the crankcase halves were not in proper alignment. (*Id*.) Plaintiffs argue that Goodley could have commented or offered a contradictory opinion to Seader's report, but did not. (*Id*. at 13.) As a result, plaintiffs argue that Rule 37(c) prevents Goodley from offering testimony on these matters at trial.

JJA, on the other hand, asserts that Goodley was questioned about the "case alignment *pins*" during his deposition, not the "case alignment dowel pin *holes*." (DN 436, p. 8.) Additionally, JJA contends that, although Goodley stated during his deposition that he made comments and notes on the subject of the pins, plaintiffs' counsel never followed up on the subject. Even beyond that, JJA argues that Goodley's report *did* address anomalies in the accessory gear case, which includes the location of the pin holes, and he concluded that they were unlikely to have caused substantial problems for a variety of reasons. (*Id*. at 6.)

JJA further asserts that plaintiffs' experts claim that "the case misalignment evidenced by the alleged modifications to the pin holes caused a misalignment and modification of the gears and gear shaft bores within the accessory case." (*Id*.) Stated another way, "*if* the case alignment dowel pin holes had an effect at all it would have been manifested through the accessory case gears, which Mr. Goodley addressed in his report and deposition." (*Id*. at 10; *see also id*. at 6-7.) Specifically, Goodley considered the physical evidence of the mesh of the gears, the condition of the engine oil, and the reported and recorded performance of the engine; therefore, JJA contends that he did not need to directly address the case alignment dowel pin holes and crankcase machining other than as part of the body of work done by JJA which could not "have been a substantial factor in generating significantly increased engine vibration." (*Id*. at 7.) In other

words, JJA argues that Goodley ruled out any causal connection between accessory gear case anomalies and gear vibration in his report.  Finally, JJA argues that, while an expert report must contain a complete statement of all opinions, Rule 26 contemplates that an expert will supplement, elaborate upon, explain, and subject himself to cross-examination on his report.

## II.    DISCUSSION

Rule 26(a)(2)(B)(iii) states that an expert report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them."  Fed. R. Civ. P. 26(a)(2)(B)(iii).  Rule 26 also "contemplates that the expert will supplement, elaborate upon, explain and subject himself to cross-examination upon his report."  *Thompson v. Doane Pet Care Co.*, 470 F.3d 1201, 1203 (6th Cir. 2006).

Rule 37(c)(1) sets forth the consequences for a party's failure to comply with Rule 26(a).  Rule 37(c)(1) states, in pertinent part, "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

As an initial matter, the Court is not certain that the Motion to Preclude even presents a true dispute.  Rule 37(c)(1) clearly prohibits the use at trial of information that was not disclosed pursuant to Rule 26(a).  *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn.*, 388 F.3d 976, 983 (6th Cir. 2004) ("The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless.").  Therefore, unless and until Goodley attempts to testify at trial as to an opinion not contained in his report, there does not appear to be an issue for the Court to resolve.  And, if Goodley does attempt to offer at trial an

4

opinion not contained in his report, plaintiffs may raise an objection.  As plaintiffs point out, Goodley testified at his deposition that he does not believe that he stated anything about the "case alignment pins" in his report, only that he has made comments and notes.  (DN 412-5, pp. 2-3.)  Nonetheless, the Court will address the parties' arguments in an attempt to clarify some issues should they arise at trial.

JJA is correct in stating that Goodley opined that there were "some accessory gear case anomalies," and that he described several reasons why these anomalies were unlikely to have caused substantial problems.   (DN 412-3, p. 16 ["There were some accessory gear case anomalies but these are unlikely to have caused substantial problems for the following reasons . . . ."].)   Moreover, based on that analysis, Goodley ultimately concluded that nothing in JJA's overhaul of the engine could have been a substantial factor in generating significantly increased engine vibration.  It does not appear, however, that Goodley actually identified the "accessory gear case anomalies."  (*See id*.)  JJA argues that plaintiffs' experts and Goodley recognized that the larger topic of "accessory gear case anomalies" encompassed the narrower issue of case alignment dowel pin holes; however, but JJA can point to no specific identification of accessory gear case anomalies, including enlarged pin holes, by Goodley.  (DN 436, p. 9.)

On the other hand, one could also assume that Goodley was simply rebutting the opinions of plaintiffs' expert witnesses, including those of Mark Seader.  In paragraph 24 of his report, Seader listed several reasons why he contends the overhaul of the engine by JJA was defective.  For example, Seader stated that "[t]he alignment pin holes on the accessory case show evidence of being manually enlarged to facilitate installation of the accessory case housing into the crankcase" and that the "crankcase halves were not in proper alignment because of being

improperly machined" – things that he claims separately, or in combination with other things, contributed to increased engine vibrations.  (DN 412-2, p. 7.)   Goodley even specifically addressed Seader's opinion in his report, stating, "Mr. Seader has insisted that the vibration which he believes would have resulted from the condition of the accessory gears and gear bores would have resulted in accelerated wear of the gears and bores which would have resulted in metal particle accumulation in the engine oil.  No abnormal quantities of metal particles were found . . . ."  (DN 412-3, p. 29.)   And in the section addressing the "accessory gear case anomalies," Goodley concluded, among other things, that the engine oil revealed no visible accumulation of metal particles and accessary gears rotated against each other smoothly.  (*Id*. at 17-18.)   In sum, while Goodley did not expressly state that the accessory gear case anomalies included any enlarged pin holes, Goodley did directly address the evidence, or lack thereof, of excessive vibrations, which plaintiffs claim was caused, at least in part, by the enlarged pin holes.

Finally, plaintiffs' own argument supports the proposition that Goodley was rebutting their experts' opinions and that the anomalies described by Goodley included the pin holes. Plaintiffs state, "Goodley had precise notice that multiple experts for the Plaintiffs would offer opinions relating to the pins and pinholes, as well as the crankcase modification . . . ."  (DN 442, p. 4; *see also* DN 442, p. 2 ["Seeder [sic] concludes that this modification [*i.e.*, enlargement of the alignment pin holes on the accessory case to facilitate installation of the accessory case housing into the crankcase], considered individually or when combined with Jewell's other faulty repairs, were substantial factors contributing to increased engine vibration leading to the separation of the magneto from its drive coupling causing the engine to lose power."].)

6

The purpose of an expert report is to eliminate "unfair surprise to the opposing party and the conservation of resources." *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir. 1995). To say that plaintiffs were unfairly surprised would be a stretch given that their experts' contend that the mistakes made by JJA in its overhaul of the engine caused excessive vibrations. This is especially true given that plaintiffs contend that Goodley knew about their experts' opinions when drafting his report. Furthermore, plaintiffs' counsel could also have asked Goodley to expound on the "accessory gear case anomalies" at his deposition. *Cf. Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998) ("The report must be complete such that opposing counsel is not forced to depose an expert in order to avoid ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources.").

That said, "Under Rule 26(a), a 'report must be complete such that opposing counsel is not forced to depose an expert in order to avoid an ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources.'" *R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010) (quoting *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 n.6 (7th Cir.1998)). There is no doubt that Goodley's report could have been clearer; ideally, it would have described the "accessory gear case anomalies." Indeed, depending on how Goodley testifies at trial, plaintiffs may have a sustainable objection. Certainly plaintiffs' counsel is free at trial to ask Goodley to expound on what he meant by "accessory gear case anomalies" and ask him why his report does not specifically mention case alignment dowel pin holes. If Goodley were to testify that "accessory gear case anomalies" did not include the case alignment pin holes, but he wanted to

7

offer an opinion on the pin holes nonetheless, the Court could foresee a valid objection from plaintiffs.  And, as stated previously, the Court could further foresee entertaining on objection from plaintiffs if Goodley attempts to offer any opinions *not* included in his expert report.

But, at this time the Court believes that a prohibition on certain testimony from Goodley would be premature given that there is no context for such a ruling.  Thus, the Court declines to preemptively prohibit Goodley from testifying regarding the enlargement of the alignment pin holes on the engine's crankcase and whether the enlargement of those pin holes by John Jewell caused excessive vibrations.  *See, e.g.*, *In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*, 643 F. Supp. 2d at 482 ("There is no doubt that Tallett's report is imperfect. Ideally, an expert report would contain every fact, conclusion, and detail of the planned testimony. However, '[s]ection 26(a)(2)(B) does not limit an expert's testimony simply to reading his report . . . . The rule contemplates that the expert will supplement, elaborate upon, explain and subject himself to cross-examination upon his report.'") (quoting *Thompso*n, 470 F.3d at 1203).

## III.  CONCLUSION

For the foregoing reasons, the Motion to Preclude Certain Testimony and Opinions of Scott Goodley (DN 412) is DENIED.

cc:  Counsel of record