UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:07-CV-638-DJH

**LARRY CROUCH, et al.,**                                                                            **Plaintiffs,**

v.

**JOHN JEWELL AIRCRAFT, INC.,**                                                                  **Defendant.**

### MEMORANDUM OPINION AND ORDER

Before the Court is a "Motion to Exclude Jack Sink's Expert Report" ("Motion to Exclude") (DN 424) filed by defendant John Jewell Aircraft ("JJA"). Plaintiffs Larry Crouch, Rhonda Crouch, Teddy Hudson, and Carolyn Hudson have filed a response (DN 441), and JJA filed a reply (DN 454). Thus, this matter is ripe for review. For the reasons stated herein, the Motion to Exclude is granted.

**I.     BACKGROUND**

This matter arises out of a plane crash that occurred on November 21, 2006 when Larry Crouch was operating a Piper aircraft en route from Mayfield, Kentucky to Frankfort, Kentucky. Teddy Hudson was a passenger in the aircraft. Crouch and Hudson suffered serious injuries, including paraplegia, as a result of the plane crash. Plaintiffs filed their complaint in this Court on November 19, 2007 suing various parties. This matter has followed a complicated and convoluted path since that time. The Court will recount part of that history here to give this memorandum opinion some context.

On February 17, 2010, the claims by plaintiffs against one of the original defendants in this lawsuit, Teledyne Continental Motors, Inc. ("TCM"), were transferred to the United States

District Court for the Southern District of Alabama ("the Alabama action"). (DN 184.) Plaintiffs' theory of liability against TCM in the Alabama action appears to have been that a defective magneto, including flanges, designed and manufactured by TCM and installed in the Piper aircraft, was a substantial factor in the subject plane crash. On August 5, 2011, a jury found for TCM on all counts. The judgment in favor of TCM was affirmed on appeal to the United States Court of Appeals for the Eleventh Circuit. Meanwhile, the lawsuit in this Court continued to move forward.

At this stage, only plaintiffs, intervenor plaintiffs,[1] and JJA remain as parties, and trial has been set for April 11, 2016. Both parties have filed a variety of motions in preparation for that trial. The Motion to Exclude is one of those motions and is directed at Jack Sink, one of plaintiffs' damages experts.

## II.   DISCUSSION

In the Motion to Exclude, JJA contends that Sink's expert reports fail to comply with Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure. As a result, JJA argues that, pursuant to Rule 37, Sink should be prohibited from offering expert testimony at trial. JJA also argues that Rule 702 of the Federal Rules of Evidence bars Sink's testimony. Plaintiffs, on the other hand, assert that Sink's reports substantially comply with Rule 26 and any failure to fully comply was harmless; plaintiffs assert that Sink's opinions are relevant and reliable as well. The Court will address the parties' contentions in more detail below.

---

[1] An intervenor complaint was filed by Kentucky Associated General Contractors Self-Insurance Fund on April 28, 2008 (DN 79); another intervenor complaint was filed by Bridgefield Casualty Insurance Company on April 15, 2009 (DN 118).

2

A. **Rules 26 and 37 of the Federal Rules of Civil Procedure**

    1. **Rules 26 and 37**

Pursuant to Rule 26(a)(2)(B), an expert report *must* contain the following:

(i)     a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii)     the facts or data considered by the witness in forming them;

(iii)     any exhibits that will be used to summarize or support them;

(iv)     the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v)     a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi)     a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).

The consequences of failing to comply with Rule 26 are found in Rule 37(c)(1). Rule 37(c)(1) states in pertinent part:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> **(A)** may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> **(B)** may inform the jury of the party's failure; and
>
> **(C)** may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37. "The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless." *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn.*, 388 F.3d 976, 983 (6th Cir. 2004).

### 2. Relevant background information

Plaintiffs identified Sink as an expert witness in July 2013.[2] Sink was subsequently deposed in February 2014. Plaintiffs supplemented Sink's expert disclosure in March 2014. That supplement included Sink's fee schedule, invoices, and a list of federal cases in which he provided testimony in the last four years.

On March 19, 2014, JJA filed a motion to stay its expert disclosure deadline. (DN 357.) The reasons given for the motion to stay included (1) that there was a fully-briefed motion to strike certain expert reports proffered by plaintiffs; and (2) that, due to Rule 26 deficiencies discovered during the depositions of Ralph Crystal, Harvey Rosen, and Sink taken in February 2014, JJA would need to file additional motions to strike. (DN 357-1, p. 2.) On September 30, 2014, the Court issued a memorandum opinion and order which denied as moot JJA's March 2014 motion to stay its expert disclosure deadline, among other things. As part of the September 2014 memorandum opinion and order, the Court ordered plaintiffs to "serve reports from each expert witness they have already identified as such" by October 31, 2014; the memorandum opinion and order also set a new deadline for JJA to re-depose plaintiffs' experts and to make its own expert disclosures. (DN 379, p. 2.) With respect to plaintiffs' obligation, the Court stated, "Each report shall be revised as needed to make sure that it **fully** complies with the requirements of Federal Rule of Civil Procedure 26, and plaintiffs are strongly cautioned to err on the side of caution when evaluating compliance." (*Id*. [emphasis in original].) As far as the Court is aware,

---

[2] Sink was also disclosed as an expert by plaintiffs in the Alabama action.

Sink's expert disclosure was not supplemented following the September 2014 memorandum opinion and order.

### 3. Analysis

JJA asserts that Sink's reports did not reveal the facts and data considered by him. JJA further asserts that Sink's reports did not contain all of his opinions. JJA contends that plaintiffs had a chance to correct any deficiencies pursuant to the September 2014 memorandum and opinion and order and failed to do so. The Court will address each alleged deficiency in turn.

#### a. Facts and data considered

JJA argues that Sink projected costs without any support for the cost estimates contained in his reports, only revealing this information at his deposition. For example, Sink opined that Crouch and Hudson needed attendants at home at a cost of $15.50 an hour, but his reports did not specifically state where he obtained this figure. (*See* DN 424-2, p. 23 [Crouch]; DN 424-3, p. 23 [Hudson].) Additionally, Sink stated that physical therapy costs $247 per visit, with a total of $25,688 a year based on two visits a week; the reports do not name the source of the $247 estimate either. (DN 424-2, p. 11 [Crouch]; DN 424-3, p. 9 [Hudson].) JJA asserts that only at deposition did Sink identify support for his pricing information.

Plaintiffs do not directly address JJA's contentions other than to generally state that Sink's reports "includes details of the data he relies on, the methodology he used to arrive at his opinions, and the steps he took to have the opinion reviewed." (DN 441, p. 6.) Plaintiffs further state that, to the extent that any harmless deficiencies in his disclosure exist, there is no prejudice to JJA in light of the fact that they had the opportunity to depose Sink "by phone or demand supplementary disclosures." (*Id*. at 8-9.)

In its reply, JJA points out for the first time that the pricing data produced at Sink's deposition was from 2010, and the costs included in his July 2013 reports are based on 2009 pricing information. Thus, according to JJA, Sink still has not provided the facts and data he considered when forming his opinions. (DN 454, p. 4.)

The Court finds that Sink's experts reports are plagued with deficiencies. Possibly the most egregious is his failure to include the source(s) of the information used to formulate the costs utilized in the life care plans for Crouch and Hudson. At his deposition taken in February 2014, Sink confirmed that the health cost survey, which is where he obtained the costs used to prepare his reports, was not included with the reports. (DN 441-2, p. 40; *see also* DN 454-1 [Health Cost Survey – Crouch]; DN 454-2 [Health Cost Survey – Hudson].) Sink then testified that the costs in the health cost survey were priced in 2010 dollars. (*Id*. at 47-48.) Sink later realizes he has misspoken and says that the cost information in the life care plans are based on a 2009, not 2010, health cost survey, and are thus based on 2009 dollars. (*Id*. at 85-86, 92.) In short, even Sink had a hard time deciphering the source of the prices listed in the life care plans formulated for Crouch and Hudson in his July 2013 reports. An adequate expert report would by definition preclude such an uncertainty

The deficiencies in Sink's reports do not stop there. Sink admitted that he considered other materials that were not disclosed in his report, at least with respect to Crouch, such as the expert report of Ralph Crystal, Harvey Rosen's report, and the depositions of Dr. Rommelman and Dr. Johnson. (DN 441-2, p. 44-45.); *see also* Fed. R. Civ. P. 26(a)(2)(B) (stating that the report must contain "the facts or data considered by the witness in forming" opinions). In addition, Sink testified that he had a conversation with Dr. Stevens in August 2010, a

rehabilitation medicine specialist, who suggested changes for Crouch's life plans that Sink made. (*Id*. at 43.) That information was not disclosed in the report regarding Crouch either.

It is unclear to the Court why Sink's July 2013 reports were not supplemented after the deficiencies were revealed at his February 2014 deposition. Indeed, plaintiffs were not only given a chance to cure the deficiencies, but were *ordered* to do so in the September 2014 memorandum opinion and order. (DN 379, p. 2.) Between Sink's deposition and JJA's motion to stay its expert disclosure deadline (DN 357), plaintiffs were surely on notice that Sink's reports did not conform to Rule 26. Thus, the Court cannot see how plaintiffs' failure to supplement Sink's reports was substantially justified. And, although JJA was notified at Sink's deposition that Sink relied on a 2009 health cost survey in formulating the life care plans, it does not appear that plaintiffs ever produced the 2009 health cost survey to JJA. The only health cost survey produced was the 2010 one at Sink's deposition. *Cf. Burke v. U-Haul Int'l*, No. CIV.A. 3:03CV32H, 2004 WL 5499520, at *7 (W.D. Ky. Dec. 7, 2004) ("Not only does Anderson clearly set forth his opinions, he also provides the basis for each of them. Anderson identifies all of the materials that he reviewed in preparing the report at the outset of it. He summarized the KARCO test results in his report and subsequently provided the KARCO report itself to U–Haul within a matter of weeks after his initial report.").

One could argue that JJA was not prejudiced by Sink's failure to disclose in his report with respect to Crouch the other documents he relied upon (*e.g.*, expert reports and deposition testimony) or the conversation with Dr. Stevens. But the Court cannot conclude that plaintiffs' failure to provide the correct health care cost survey was harmless in this situation. *See, e.g.*, *Paramount Media Grp., Inc. v. Vill. of Bellwood*, No. 13 C 3994, 2015 WL 5307483, at *5 (N.D.

Ill. Sept. 10, 2015) (overruling objections to magistrate judge's order barring expert's testimony because "his report did not disclose Wiegman's involvement [or] the bases for the 'construction cost' item in the spreadsheet"). And more importantly, plaintiffs have failed to demonstrate harmlessness. *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) ("We agree with the circuits that have put the burden on the potentially sanctioned party to prove harmlessness."). The costs used by Sink to formulate the life care plans for Crouch and Hudson are the exact type of data that Rule 26 contemplates should be disclosed so that "opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." Fed. R. Civ. P. 26(a)(2) cmt. (1993).

While the Court realizes that Rule 37 permits a less severe sanction, the Court does not see that a less severe sanction could sufficiently right the wrong that has occurred here. Not only was the non-disclosed information vital, plaintiffs were given a second chance to supplement Sink's reports after being put on notice of the problems with it yet failed to do so. Consequently, pursuant to Rule 37, Sink's July 2013 reports are stricken, and plaintiffs are precluded from relying on the expert opinions of Sink at trial. *See, e.g.*, *Emerman v. Fin. Commodity Investments, L.L.C.*, No. 1:13CV2546, 2015 WL 6742077, at *11 (N.D. Ohio Nov. 2, 2015) (prohibiting witness from testifying at trial because "Plaintiffs have failed to comply with either the disclosure obligations set forth in Rule 26(a) or this Court's July 21, 2015 Order and, therefore, sanctions are warranted under Rule 37."); *see also Wells v. Craig & Landreth Cars, Inc., et al.*, 3:10-cv-376-CRS, 2012 WL 2064700, at *1 (W.D. Ky. June 7, 2012) (DN 113) ("The motion by Craig and Landreth's to strike Wells' expert witness disclosures pertaining to Coker

will be granted. As Craig and Landreth point out, Wells' purported expert witness disclosure of September 6, 2011, did not contain a written report prepared by the witness, as required by Rule 26(a)(2)(B), containing, among other things, a statement of the opinions the witness will express, the basis and reasons for the opinions, the facts or data considered by the witness, the exhibits used to summarize or support the opinions.").

### b.     Complete statement of opinions

JJA asserts that Sink's expert reports provided by plaintiffs on July 15, 2013 were incomplete. JJA states that Sink contacted plaintiffs in preparation for his February 2014 deposition and, based on those conversations, Sink testified that he needed to change the opinions contained in his July 2013 reports. Specifically, Sink opined that Hudson would need more therapy than what was described in his July 2013 report; Sink also mentioned Crouch's request that Crouch be provided with additional medical equipment for his Florida home. But plaintiffs never provided updated reports from Sink with this additional information.

In response, plaintiffs claim that Sink was simply fulfilling his obligations under Rule 26(a)(2)(E) and 26(e) to supplement his opinions with additional information as it became available. Thus, plaintiffs claim that JJA was not prejudiced by having updated information and opinions at the time of Sink's deposition.

A review of Sink's deposition testimony is illuminating. First Sink testifies that his report on Crouch do not contain all of his opinions. "Q. So it does not contain all your opinions? A. No, it does not . . . ." (DN 441-2, p. 36; *see also id*. at pp. 37-38.) Sink further testifies that some additions need to be made to the report addressing Crouch and "probably" to his report regarding Hudson as well. (*Id*.) Later in his deposition testimony, Sink describes the additional

9

opinions he has with respect to Crouch and Hudson.  With respect to Crouch, Sink testifies that he requires additional equipment for his house in Florida, a house he owned prior to the accident and where he spends a substantial amount of time.  (*Id*. at 86-87.)  With respect to Hudson, Sink testifies that he is receiving two physical therapy visits a week and a physical therapy aide is coming to his house the other three days.  (*Id*. at 86.)  As far as the Court knows, Sink's reports were not supplemented to reflect this information, even after the September 14, 2014 memorandum opinion and order was issued.

"Under Rule 26(a), a 'report must be complete such that opposing counsel is not forced to depose an expert in order to avoid an ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources.'"  *R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010) (quoting *Salgado v. Gen. Motors Corp.,* 150 F.3d 735, 742 n.6 (7th Cir.1998)).  Deposing Sink is exactly what JJA had to do in order to avoid ambush at trial.  The Court is again bewildered as to why Sink's July 2013 reports were not supplemented with this information when plaintiffs were given another chance to do so and after Sink flatly testified that his reports did not include all of his opinions.  Under these circumstances, plaintiffs cannot show substantial justification.  Of course if this were the only omission from Sink's reports, the Court might be inclined to prohibit Sink from presenting expert testimony only with respect to the additional opinions not disclosed in his July 2013 reports.  But plaintiffs have not met their burden to show harmlessness either.

"The Sixth Circuit interprets harmlessness in Rule 37(c) as requiring an 'honest mistake' by the violating party and 'sufficient knowledge' by the wronged party."  *Ellis v. Arrowood*

*Indem. Co.*, No. CIV. 12-140-ART, 2015 WL 2061936, at *10 (E.D. Ky. Apr. 30, 2015) (quoting, in part, *Sommer v.. Davis,* 317 F.3d 686, 692 (6th Cir.2003)). While one could argue that JJA had sufficient knowledge of Sink's additional opinions *following the deposition*, the failure to supplement Sink's reports does not appear to be a mere "honest mistake" on the part of plaintiffs; rather it appears to be a deliberate choice by plaintiffs not to remedy the defects in Sink's July 2013 reports.

      **B.**      **Federal Rule of Evidence 702**

Because the Court has determined that Sink is prohibited from testifying at trial, there is no need to address JJA's arguments with respect to Rule 702.

**III.**      **CONCLUSION**

For these reasons, the Motion to Exclude (DN 424) is GRANTED. Sink's July 2013 expert reports are stricken and he is prohibited from testifying at trial.

cc: Counsel of record

11