UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO.  3:07-CV-638-DJH

LARRY CROUCH, et al.,                                                              Plaintiffs,

v.

 JOHN JEWELL AIRCRAFT, INC.,                                            Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is a "Motion to Exclude Harvey Rosen's Expert Report" ("Motion to Exclude") (DN 423) filed by defendant John Jewell Aircraft, Inc. ("JJA").  Plaintiffs Larry Crouch, Rhonda Crouch, Teddy Hudson, and Carolyn Hudson have filed a response (DN 435), and JJA filed a reply (DN 453).  Thus, this matter is ripe for review.  For the reasons stated herein, the Motion to Exclude is granted.

I.      **BACKGROUND**

This matter arises out of a plane crash that occurred on November 21, 2006 when Larry Crouch was operating a Piper aircraft en route from Mayfield, Kentucky to Frankfort, Kentucky. Teddy Hudson was a passenger in the aircraft.  Crouch and Hudson suffered serious injuries, including paraplegia, as a result of the plane crash.  Plaintiffs filed their complaint in this Court on November 19, 2007 suing various parties.  This matter has followed a complicated and convoluted path since that time.  The Court will recount part of that history here to give this memorandum opinion some context.

On February 17, 2010, the claims by plaintiffs against one of the original defendants in this lawsuit, Teledyne Continental Motors, Inc. ("TCM"), were transferred to the United States

1

District Court for the Southern District of Alabama ("the Alabama action").   (DN 184.)
Plaintiffs' theory of liability against TCM in the Alabama action appears to have been that a
defective magneto, including flanges, designed and manufactured by TCM and installed in the
Piper aircraft, was a substantial factor in the subject plane crash.   On August 5, 2011, a jury
found for TCM on all counts.   The judgment in favor of TCM was affirmed on appeal to the
United States Court of Appeals for the Eleventh Circuit.   Meanwhile, the lawsuit in this Court
continued to move forward.

At this stage, only plaintiffs, intervenor plaintiffs,[1] and JJA remain as parties, and trial
has been set for April 11, 2016.   Both parties have filed a variety of motions in preparation for
that trial.   The Motion to Exclude is one of those motions and is directed at Harvey Rosen, one of
plaintiffs' damages experts.

## II.      DISCUSSION

In the Motion to Exclude, JJA asks the Court to strike the expert report of Rosen because
it fails to comply with Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure.   As a result of
these deficiencies, JJA contends that under Rule 37(c) Rosen should be prohibited from offering
testimony at trial.   JJA also asks the Court strike Rosen's report because it is not relevant and is
based on unreliable data.   Plaintiffs, on the other hand, assert that Rosen has substantially
complied with Rule 26 of the Federal Rules of Civil Procedure and any failure to fully comply
was harmless; plaintiffs also assert that Rosen's opinions are relevant and reliable as well.   The
Court will address the parties' contentions in more detail below.

---

[1] An intervenor complaint was filed by Kentucky Associated General Contractors Self-Insurance Fund on April 28, 2008 (DN 79); another intervenor complaint was filed by Bridgefield Casualty Insurance Company on April 15, 2009 (DN 118).

2

### A.   Rule 26 of the Federal Rules of Civil Procedure

Pursuant to Rule 26(a)(2)(B), an expert report *must* contain the following:

(i)    a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii)    the facts or data considered by the witness in forming them;

(iii)    any exhibits that will be used to summarize or support them;

(iv)    the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v)    a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi)    a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).

Rule 37(c)(1) sets forth the consequences for a party's failure to comply with Rule 26(a).

Rule 37(c)(1) states, in pertinent part:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> **(A)**    may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> **(B)**    may inform the jury of the party's failure; and
>
> **(C)**    may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37.  "The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless."   *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn.*, 388 F.3d 976, 983 (6th Cir. 2004).

3

Plaintiffs disclosed Rosen as an expert on July 15, 2013. (*See* DN 316.) Rosen was subsequently deposed by JJA in February 2014. (DN 423-1, p. 4.) Although in the brief supporting the Motion to Exclude JJA asserts that Rosen's expert disclosure was not supplemented at all, it does appear that plaintiffs did provide some supplemental information on March 24, 2014. (*Compare* DN 423-1, p. 6 ["Mr. Rosen never supplemented his report. He also elected not to file a revised report when the Court re-set plaintiffs' expert report disclosure deadline."] *with* DN 453, p. 3 ["Importantly, Mr. Rosen did not supplement his report to include that information in March 2014, with his other supplement, or after the Court's September 2014 Order."]). Indeed, JJA provides as an exhibit the supplement to Rosen's report. (*See* DN 453-1.) Whether this was a calculated misstatement or an oversight, the Court does not know. Regardless, the Court cautions JJA to be precise in its language. However, even with the March 2014 supplementation, JJA still contends that Rosen's expert disclosure is deficient under Rule 26.

JJA notes that, in a September 30, 2014 memorandum opinion and order, the Court ordered plaintiffs to serve reports from each expert witness they had already identified. The Court specifically stated that "[e]ach report shall be revised as needed to make sure that it **fully** complies with the requirements of Federal Rule of Civil Procedure 26, and plaintiffs are strongly cautioned to err on the side of caution when evaluating compliance." (DN 379, p. 2, emphasis in original.) A motion to strike Rosen's report was not directly before the Court when it issued its September 30, 2014 memorandum opinion and order. The deficiencies in Rosen's report were not unknown to plaintiffs, however; they were raised by JJA in its motion to stay its expert

4

disclosure deadline, which was directly disposed of by the September 30, 2014 memorandum opinion.  It does not appear that plaintiffs' supplemented the expert disclosure with respect to Rosen after the September 30, 2014 order.

JJA asserts that Rosen's report (and supplement) did not include a list of publications, testimony given in the last four years, compensation information, or the facts and data considered, and therefore he should be prohibited from testifying at trial pursuant to Rule 37. The Court will address each category in turn.

### 1.      List of publications

JJA asserts that a complete listing of publications authored in the last ten years was not included in Rosen's expert disclosure:  the most recent publication listed was from 2010 and Rosen admitted at his deposition that he updated at least two articles after 2010.   Plaintiffs correctly state that Rosen testified at his deposition that he had no *new* publications since 2010, only two articles that had been revised from earlier versions that had been disclosed.  (*See* DN 435-1, p. 29.)  While Rosen should have been more conscientious, the Court finds that the failure to list the two *revised* articles was harmless in this instance.

### 2.      Trial or deposition testimony for the last four years

JJA states that, as part of the July 2013 disclosure, Rosen's report listed partial names of "Selected Cases" alongside various years.  The last case listed was in 2008 – "Mound SuperFund Real Estate Litigation."  (DN 423-2, p. 5.)   JJA identifies two additional cases that it claims show that Rosen failed to make a complete disclosure:  *Rogge v. Estes Express Lines*, No. 3:13-cv-1227, 2014 U.S. Dist. LEXIS 159839, at *3-5 (N.D. Ohio Nov. 10, 2014),where a "Harvey Rosen" was excluded from testifying, and *Saks v. Riga*, No. 101091, 2014-Ohio-4390, ¶¶ 4, 5, 19

(Ohio Ct. App. Nov. 6, 2014), where a "Harvey Rosen" apparently testified in a 2012 trial.  Even for the disclosed cases, JJA states that no case number or jurisdictional information was provided.

Plaintiffs claim that the complete list of "federal" cases was inadvertently left out of Rosen's initial report.  Plaintiffs also claim that JJA never brought the omission to the attention of plaintiffs' counsel in the seven months between Rosen's expert disclosure and his February 2014 deposition.  During that deposition, Rosen admitted that his curriculum vitae did not include a complete list of his trial and deposition testimony for the last four years; Rosen stated that he would provide that list.  (DN 435-1, pp. 17-18.)  In March 2014, plaintiffs provided JJA what they claim was a "complete federal case list" for Rosen.  (DN 435, p. 3.)

With respect to the *Rogge* case, JJA states, "Arguably, Mr. Rosen was not required to include his testimony in *Rogge* in his March 2014 supplementary disclosure."  (DN 435, p. 5.) JJA does not expressly state why; the Court assumes that this is because Rosen did not actually testify at that trial.  With respect to the *Saks* case, while it is not totally clear, it does appear that it was referenced, albeit poorly, in the March 2014 supplement:  while no case caption or party names were listed, an entry makes reference to a case in "Cyuahoga [sic] County Court of Common Pleas" that involved "Saks, Jeffrey."  (*See* DN 453-1, p. 25.)

Rosen's expert disclosure insofar as it relates to trial and deposition testimony (DN 45, pp. 10, 12-13, 15) is plagued with problems.  The Court agrees with JJA that Rosen's case list in the March 2014 supplement provided by plaintiffs is deficient and virtually unusable.   After a survey of the alleged "complete list" at DN 453-1, pp. 25-28, it is clear that Rosen did an inadequate job of identifying cases in which he provided trial or deposition testimony for the last

four years, including for the *Saks* case.  Many of the case captions, case numbers, and jurisdictional information are missing entirely or are incomplete.

"Rule 26 requires more than attempted compliance; it requires mandatory disclosure of all deposition and trial testimony within the past four years, together with sufficient information about where that testimony was given to enable the opposing party to gain access to it."  *Ater ex rel. Ater v. Follrod*, No. 2:00-CV-934, 2004 WL 6042439, at *3 (S.D. Ohio Nov. 10, 2004).  In order to be useful, "this listing must include, at a minimum, the courts in which the testimony occurred, the names of the parties and the case numbers, and must indicate whether the testimony was given at deposition or at trial."  *Id.* at *1 (citing *Coleman v. Dydula,* 190 F.R.D. 316, 318 (W.D.N.Y.1999); *Nguyen v. IBP, Inc.,* 162 F.R.D. 675, 682 (D.Kan.1995)).

The Court finds particularly disturbing Rosen's failure to supplement his report with a complete and useful list of trial or deposition testimony for the last four years, especially considering the order entered in September 2014 directing plaintiffs to make expert disclosures that *fully comply* with Rule 26.  Plaintiffs claim that they offered to make Rosen available for a follow-up deposition "so that Jewell could ask any questions it had about the fee schedule and the federal case list."  (DN 435, p. 3.); *see also Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) ("We agree with the circuits that have put the burden on the potentially sanctioned party to prove harmlessness.").  Even if JJA had opted to re-depose Rosen after receiving the supplemental trial and deposition testimony list from plaintiffs in March 2014, it is questionable how productive any such deposition would have been considering the deficiencies of that supplemental list.

The failure to supplement Rosen's expert disclosure with a complete and useful list of trial and deposition testimony for the last four years stands as an independent basis upon which to prohibit him from testifying at trial. *See, e.g.*, *Wells v. Craig & Landreth Cars, Inc., et al.*, 3:10-cv-376-CRS, 2012 WL 2064700, at *1 (W.D. Ky. June 7, 2012) (DN 113) ("The motion by Craig and Landreth's to strike Wells' expert witness disclosures pertaining to Coker will be granted. As Craig and Landreth point out, Wells' purported expert witness disclosure of September 6, 2011, did not contain a written report prepared by the witness, as required by Rule 26(a)(2)(B), containing, among other things, a statement of the opinions the witness will express, the basis and reasons for the opinions, the facts or data considered by the witness, the exhibits used to summarize or support the opinions."). Moreover, for the reasons discussed below, there is an additional basis for the exclusion of Rosen, namely that his opinions will not help the jury to determine any fact in issue.

### 3.    Compensation information

JJA asserts that, in addition to the already-mentioned shortcomings, plaintiffs failed to disclose information about Rosen's compensation. While it does not appear that Rosen's compensation information was included in his initial expert disclosure, his fee schedule and a copy of his invoice to plaintiffs' counsel was provided in the March 2014 supplement. JJA does not seem to dispute this. While this information would have ideally been disclosed as part of Rosen's initial expert disclosure, Rosen's compensation information was eventually disclosed. Under these circumstances, and without more information, it appears that the initial failure to do so was ultimately harmless.

### 4.    Facts and data considered

As the Court stated, Rosen will be prohibited from testifying at trial based on relevancy grounds.  Nonetheless, the Court is sufficiently bothered by the failure of Rosen to disclose the facts and data he considered in determining the 2.25% growth rate, sometimes referred to by the parties as an inflation factor, used in his reports that it bears mention here.

Rosen was retained by plaintiffs to calculate the actual cost and present value of the amount of money that would be required to fund the life care plans created by another one of plaintiffs' experts, Jack Sink.   JJA argues that Rosen did not explain his calculations in determining a lump sum value.  JJA takes particular issue with Rosen's failure to describe his process for determining the 2.25% growth rate listed in his report.  Specifically, the report states, "All Future needs have been grown at 2.25% real & discounted at various real discount rates (See Table 4) unless otherwise noted on table."   (DN 423-3, p. 4.; *see also* DN 423-4, p. 4 ["All Future needs have been grown at 2.25% real & discounted at 0.00% real unless otherwise noted on table."]; DN 423-5, p. 4 ["All Future needs have been grown at 2.25% real & discounted at 0.00% real unless otherwise noted on table."]; DN 423-6, p. 4 ["All Future needs have been grown at 2.25% real & discounted at various real discount rates (See Table 5) unless otherwise noted on table."].)  JJA claims that Rosen's report is deficient because it does not disclose the process used and data relied upon to calculate the inflation multiplier.  JJA asserts that this failure is significant because a poorly derived inflation factor will result in inaccurate total figures.  JJA has pointed to no case specifically holding that an expert report must be excluded on the basis the expert failed to disclose the data upon which he relied in determining the inflation rate used.

9

Plaintiffs respond that Rosen identified the "specific inflation index" he used for each category of needs and that there is no requirement that Rosen actually show his arithmetic when he has sufficiently disclosed the data and the process upon which he relied to make his conclusions.

In its reply, JJA argues that plaintiffs purposely miss the point.  The work-life estimate and life expectancy figures are plucked from tables produced by the federal government – and are not at issue here.  The issue is that Rosen failed to reveal the sources he used to calculate the proposed inflation rate utilized in his report.  JJA argues that that the only information regarding how Rosen calculated his proposed inflation number was offered at his deposition.

On whole, the Court finds both parties' arguments lacking in both detail and accuracy, especially when describing the 2.25% growth rate as an inflation rate.  At his deposition, Rosen described the 2.25% real rate as a number that has been *inflation adjusted*, that is, the amount that medical care costs have exceeded the *average rate of inflation*.  (DN 435-1, pp. 54, 56.)  The Court agrees with JJA that Rosen did not include in his report any facts or data that he relied upon in determining the 2.25% growth rate, including what inflation rate was used or where the rate was obtained.  JJA states that it "was compelled to depose Mr. Rosen simply so it could attempt to ascertain his method of calculation—a method that should have been disclosed pursuant to Rule 26(a)(2)(B)(ii)."  (DN 423-1, p. 9.)  Based on this statement, it is not clear whether JJA contends that the facts or data relied upon by Rosen were not disclosed in his report or not disclosed at all, even at his deposition.   The Court certainly finds Rosen's deposition testimony confusing in that regard.  First Rosen testifies that he relied on data from the Bureau of

Labor Statistics for the 2.25% rate.  (DN 435-1, p. 56.)   Rosen then testifies that this number is

an average.  (*Id.* at 57.)  Rosen further testifies:

> **Q:      So what I'm trying to find out, again, is, you know, did
> you take that 2.25 percent from an actual chart and you found
> 2.25 percent in an actual chart, did you circle it, or did you go
> to data and look at it and, as you said, took your experience as
> an economist and said, "I think that's what the number should
> be"?**
>
> **Rosen: It would be the latter, not the former.**

(DN 435-1, pp. 58-59.)  As a result, the Court is still uncertain exactly how Rosen obtained the

2.25% rate, a rate that could affect his final calculations.

An expert may expound on his or her opinions during a deposition.  Indeed, "The rule

contemplates that the expert will supplement, elaborate upon, explain and subject himself to

cross-examination upon his report."  *Thompson v. Doane Pet Care Co.*, 470 F.3d 1201, 1203

(6th Cir. 2006); *see also CNA Ins. Co. v. Hyundai Merch. Marine, Co.*, No. 3:07-CV-0141-CRS,

2011 WL 5181464, at *2 (W.D. Ky. Oct. 31, 2011) ("Munsch listed in his expert report and

discussed in his deposition the sources he consulted in forming his opinions . . . ."); *Burke v. U-*

*Haul Int'l, Inc.*, Civ. No. 3:03CV32 , 2006 WL 3760317, at *3 (W.D. Ky. Dec. 15, 2006) ("As a

general rule, experts will be allowed to testify concerning information, reports and observations

contained in their Rule 26 disclosure or specifically referenced in their depositions.").  On the

other hand, deposition testimony of an expert will not, as a general rule, cure a deficient expert

report.  *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008) ("Rule 26(a)(2) does not

allow parties to cure deficient expert reports by supplementing them with later deposition

testimony."); *see also Brown v. Teledyne Cont'l Motors, Inc*., Case No. 1:06-cv-26, 2007 WL

838918 (N.D. Ohio March 15, 2007) ("Rosen's proposed testimony suffers from a more

11

significant defect.   Rosen uses a figure of $12 per hour to establish the value of domestic services.   The statistical information underlying that estimate was not provided to Teledyne along with Rosen's expert report in accordance with Rule 26 of the Federal Rules of Civil Procedure.   The fact that the Browns have attached an affidavit from Rosen naming evidence, without actually providing it, fails to meet the strict obligations of Rule 26.").   In light of the exclusion of Rosen on other grounds, the Court does not need to resolve the issue of whether Rosen simply expounded on the opinions contained in his report at his deposition, or if his report was, in fact, deficient under Rule 26.  *Cf. Foraker v. Schauer*, No. CIV.04CV00363EWNOES, 2005 WL 6000493, at *8 (D. Colo. Sept. 8, 2005) ("First, the party who seeks to establish the present value of a claim for future loss must present "competent evidence" of the rates for discount and inflation.").

### B.      JJA's Attempt to Exclude Rosen's Testimony on Relevancy and Reliability Grounds

JJA also moves to exclude Rosen's expert testimony on relevancy and reliability grounds. Plaintiffs retained Rosen to examine Jack Sink's life plans and determine the present value of the money that would be necessary to fund plaintiffs' future care needs.   In doing so, Rosen purportedly used his economic expertise to determine expected inflation rates, discount rates, and health care cost growth and then applied these metrics to the numbers in Sink's reports in order to estimate the present value of future care needs.   JJA argues that Rosen's opinions are inadmissible under Federal Rules of Evidence 403, 702, and 703.   For the reasons discussed below, the Court finds that Rosen's proffered testimony fails Rule 702 and *Daubert*'s relevance prong.   His testimony is, therefore, inadmissible at trial.

12

### 1.      Standard for Expert Testimony

Federal Rule of Evidence 702, which governs the admission of expert testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> > **(b)** the testimony is based on sufficient facts or data;
> > **(c)** the testimony is the product of reliable principles and methods; and
> > **(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Supreme Court has interpreted this rule to require trial judges to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). These prerequisites apply to not only "'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting Fed. R. Evid. 702). Thus, "*Daubert* attempts to strike a balance between a liberal admissibility standard for relevant evidence on the one hand and the need to exclude misleading 'junk science' on the other." *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 176-77 (6th Cir. 2009).

Although there is "no definitive checklist or test" to strike this balance, relevant factors include: (1) whether a theory or technique "can be (and has been) tested;" (2) whether a "theory or technique has been subjected to peer review and publication;" (3) the "known or potential rate of error;" and (4) whether the theory or technique is generally accepted. *Daubert*, 509 U.S. at 593-94. These factors are not exhaustive and the inquiry is "a flexible one," *Pluck v. BP Oil*

13

*Pipeline Co.*, 640 F.3d 671, 677 (6th Cir. 2011) (citations omitted), for district courts must be mindful that "the gatekeeping inquiry must be 'tied to the facts of a particular case.'" *Kumho*, 526 U.S. at 150 (quoting *Daubert*, 509 U.S. at 591) (internal quotation marks omitted). Experts "need not testify to what is known to a certainty," *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 388 (6th Cir. 2000) (citing *Daubert*, 509 U.S. at 590) (internal quotation marks omitted), may state inferences derived from the scientific method, *Daubert*, 509 U.S. at 590, and may make deductive conclusions based on physical observations. *Kumho*, 526 U.S. at 156; *Mackenzie v. JLG Indus., Inc.*, No. 3:13-CV-01046, 2014 WL 7375546, at *8 (W.D. Ky. Dec. 29, 2014). So long as the proffered testimony "is properly grounded, well-reasoned, and not speculative," district courts should admit it, for "the rejection of expert testimony is the exception rather than the rule." *W. Tenn. Chapter of Associated Builders & Contractors, Inc. v. City of Memphis*, 300 F. Supp. 2d 600, 602 (W.D. Tenn. 2004) (citations omitted).

District courts must also be careful not to weigh one party's expert testimony against the other party's expert testimony, *Jahn*, 233 F.3d at 391, as the focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. 595. When a trial judge has doubts about the strength of proffered testimony, exclusion is not the remedy, but rather "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)). Finally, "it is the proponent of the testimony that must establish its admissibility by a preponderance of proof." *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n.10).

2.      **Analysis**

Rosen cannot testify in this case because his opinions are based on facts and data that will not be in the record.  Experts may only testify if their "knowledge will help the trier of fact *to understand the evidence or to determine a fact in issue*," and they have "reliably applied the principles and methods *to the facts of the case*."  Fed. R. Evid. 702(a), (d) (emphasis added). The Supreme Court has made clear that this relevance prong is one of "fit" in that expert testimony must be "'sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'"  *Daubert*, 509 U.S. at 591 (quoting *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985)).  Applying these principles to Rosen's proffered testimony, it is clear that his testimony does not "fit" with this case because his opinions are based on life plans that plaintiffs have no intention of trying to introduce at trial.

Sink initially prepared life plans for Crouch and Hudson for the 2011 Alabama litigation but then updated those reports in 2013 to account for the intervening years.  Although plaintiffs intend to have Sink testify to the opinions laid out in his *2013* reports, Rosen's estimates are based on the services and prices listed in Sink's *2010* reports.  Therefore, although the present value of Sink's 2013 reports is "a fact in issue in this case," Rosen's opinions are irrelevant to this issue and will not assist the jury. Fed. R. Evid. 702(a).  Assuming, *arguendo*, that Rosen has "reliably applied [his] principles and methods," he did not apply them "to the facts of the case;" rather, he applied them to the 2010 reports, which will never be before the jury.  *Id.* at 702(d). The court finds no merit in plaintiffs' attempts to cure this defect.

Plaintiffs contend that Rosen's opinions are admissible because there "is more than one way to account for a change in price over time," and Rosen picked one of the two permissible

methods.[2]  They contend that Sink could have redone his 2013 report with 2013 prices, and then Rosen could have estimated the present value of plaintiffs' future needs.[3]  Alternatively, they argue that Rosen could have used, and actually did use, actual inflation to bring the outdated prices up to 2013 dollars.[4]  This alternative argument, however, is misleading for several reasons.

First, Rosen did not apply any *actual* inflation data to the 2010 report numbers.  His report employed a growth rate of 2.25% above inflation for medical care costs, and he testified during his deposition that this number was *an average* rather than an actual inflation rate.[5]  Equally problematic is the fact that Sink's 2010 report employed 2010 cost data, but, due to a clerical error, his 2013 report employed 2009 price data.  Therefore, assuming it was permissible for Rosen to correct the numbers using estimated or actual inflation, his base year for prices (2010) is different from the base year that Sink will testify to at trial (2009).  Furthermore, a comparison of Sink's 2010 and 2013 reports shows that the choice of which year's numbers to rely on is far from academic—practically all of the prices are different.  These issues, however troubling, are not even the most egregious.  The Court has examined Sink's 2010 and 2013 reports and conducted a line-by-line review of the goods and services that Sink believes Crouch and Hudson will need for their care.  From this review, it is clear that, in addition to different prices, the required goods and services and the quantities in which they would be needed are different from report to report.

Page nine of the reports on Crouch lists "Projected Evaluations" and the "Frequency of Treatments."  In each report, Sink believes Crouch will need to see a psychiatrist, general

---

[2] DN 435, 9.
[3] *Id.*
[4] *Id.*
[5] Rosen Deposition, Pg. 56, Ln. 2-5.

practitioner, urologist, pain medication specialist, and neurosurgeon each year. The problem arises because in the 2010 report,[6] Sink has Crouch seeing a psychiatrist one to two times per year, a urologist once a year, and a pain medication specialist twice a year. In the 2013 report,[7] however, Sink has Crouch seeing a psychiatrist two to three times per year, a urologist one to two times per year, and a pain medication specialist four times per year. If they testify at trial, therefore, Sink and Rosen will be on completely different wavelengths: Sink will be testifying that Crouch needs to see a pain specialist *four* times a year, and Rosen will be testifying to the present value of *two* visits per year. Every page of the 2010 and 2013 reports is replete with similar problems.

Page ten of the 2010 report has Crouch[8] going to physical therapy six times per year, but the 2013 report has him going *twice a week*. Likewise, the 2010 report has Crouch getting a gym membership and going to an inpatient rehab program. These services are not part of the 2013 report. Additionally, page eleven of the 2010 report includes a table for "Projected Ancillary Services," a table that does not appear in the 2013 report.

Although the "Projected Medical Care" tables (pages 12 & 12a of the 2010 report and pages 11 & 11a of the 2013 report) contain many similarities, they also contain many differences. The 2010 table has Crouch receiving "KUB," but this service is absent in the 2013 report. The 2013 report also includes "pneumonia vaccine" and "video urodynamics," two items absent from the 2010 report. Moving on, the "Aids for Independent Function" table of the 2010 report contains a "portable tub bench," "portable bedside commode," "adjustable bed (dual

---

[6] DN 453-4.
[7] DN 424-2.
[8] Although both the Crouch and Hudson reports from 2010 and 2013 contain different goods and services and frequency of treatment numbers, for simplicity's sake the Court will only discuss the Crouch reports. Sink's 2010 report on Hudson can be found at DN 453-5 and his 2013 report on Hudson at DN 424-3.

king)," and "mattress (dual king)."  These items are not listed in the same table found in the 2013 report.

In 2010, Sink had Crouch taking, among other things, Zetia and Savella, but the same "Medication/Supply Needs" table in the 2013 report does not list these drugs.  Instead, the 2013 report has Crouch taking, among other things, hydrocodone, zovirax, acyoloir, and "methodone" [sic].  In 2010, as "Therapeutic Equipment Needs," Sink has Crouch needing a "stander" and "accessible gym."  These items are not listed in the same table from the 2013 report.

In 2010, Sink had Crouch needing to travel from Mayfield to Louisville one to two times per year, but in 2013, only has him making this trip once a year.  In the 2013 report, Sink has Crouch making a one-time purchase of a trailer with ramp, a purchase not accounted for in the 2010 report.  Finally, the two reports contain numerous differences for "attendant," found in the "Home Care" table.

This review makes clear that the 2010 and 2013 reports do not merely contain different pricing numbers: they are more akin to apples and oranges.  If Rosen were permitted to testify at trial, his opinions would be based on numerous services that Sink would not be asserting that Crouch needs.  Likewise, Sink would be testifying that Crouch needed many new services and medications for which Rosen would provide no opinion as to cost.

This is not a situation in which the plaintiff seeks to introduce certain facts, the defendant seeks to introduce other facts, and the parties disagree about which facts should be inputs into a methodology.  If it were, such a dispute would be a proper factual dispute for the jury.  *KCH Servs., Inc. v. Vanaire, Inc.*, No. 05-777-C, 2010 WL 1416672, at *2 (W.D. Ky. March 31, 2010).  Rather, the facts on which Rosen bases his opinion *will never be introduced into*

*evidence*.  The present value of the goods and services listed in Sink's 2013 report is a fact that is in dispute, but Rosen has no testimony that will help the jury in making this determination.  Fed. R. Evid. 702.  His proffered testimony is therefore irrelevant under *Daubert*'s relevance prong.

As a final matter, the Court notes that even if plaintiffs could somehow remedy this error, the Court has concluded in a separate opinion that Sink's July 2013 expert reports with respect to Crouch and Hudson are stricken and that he is prohibited from testifying at trial.  Thus, any way this issue is parsed, Rosen's testimony would be irrelevant.

## III.   CONCLUSION

For the foregoing reasons, John Jewell Aircraft, Inc.'s Motion to Exclude (DN 423) is GRANTED.

cc:  Counsel of record

19