# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION
### CIVIL ACTION NO.  3:07-CV-638-DJH

LARRY CROUCH, et al.,                                                                    **Plaintiffs,**

**v.**

 JOHN JEWELL AIRCRAFT, INC.,                                              **Defendant.**

### MEMORANDUM OPINION AND ORDER

Before the Court is a Motion to Reconsider (DN 539) filed by defendant John Jewell

Aircraft, Inc. ("JJA").  Plaintiffs Larry Crouch, Rhonda Mae Crouch, Teddy Lee Hudson, and

Carolyn Sue Hudson have filed a response (DN 560).[1]   No replies were permitted. Therefore,

the Motion to Reconsider is ripe for review.

## I.        BACKGROUND

On September 11, 2015, JJA filed a motion for summary judgment (DN 470); the Court

denied this motion on January 29, 2016 (DN 536).  In the Motion to Reconsider, JJA asks the

Court to reconsider its order denying JJA's motion for summary judgment.  JJA contends that the

Court denied JJA's motion for summary judgment because it also denied some of JJA's *Daubert*

motions.  JJA argues that it asserted an additional argument justifying summary judgment that

was not contingent on JJA's challenges to plaintiffs' experts.  Specifically, JJA argues that,

under Kentucky law, when two independent casual factors are equally possible, the probable

cause threshold required for an award of damages on a negligence claim has not been crossed.

---

[1] Although plaintiffs' response clarifies some of their factual allegations and many of the arguments contained
therein are well-taken, the Court sees no need to recount those allegations and arguments in this memorandum
opinion and order.

JJA contends that it is entitled to summary judgment because plaintiffs have identified at least two possible causes for the crash.

## II.    DISCUSSION

JJA relies on Rule 60(b) as the basis of its Motion to Reconsider.  The Federal Rules of Civil Procedure do not explicitly provide for a motion for reconsideration.  *Jan Tian Lin v. United States*, 2013 U.S. Dist. LEXIS 83055, *3 (W.D. Ky. June 13, 2013) (citing *Ward v. Travelers Ins. Co.*, 835 F.2d 880, *4 n.1 (6th Cir. 1987) ("There is nothing in the Federal Rules of Civil Procedure formally denominated a 'motion to reconsider . . . .'").   "Courts have [] recognized the availability of a motion for reconsideration pursuant to Rule 60, which affords courts discretion to relieve a party from final judgment, order or proceeding, if the party makes the motion within a reasonable period of time."  *Id.* at *3-4 (citing *Lewis v. Mekko*, 2011 U.S. Dist. LEXIS 18256, *2 (W.D. Ky. Feb. 24, 2011); *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 268 (6th Cir. 1998) (parenthetical quotation omitted)).

Rule 60(b)(1) of the Federal Rules of Civil Procedure states, "On motion and just terms, the court may relieve a party . . . from a[n] order . . . for mistake, inadvertence, surprise, or excusable neglect . . . ."  Fed. R. Civ. P. 60(b)(1).   "Such a motion is 'intended to provide relief to a party . . . when the judge has made a substantive mistake of law or fact in the final judgment or order.'"  *Cacevic v. City of Hazel Park*, 226 F.3d 483, 490 (6th Cir. 2000) (quoting, in part, *Yapp v. Excel Corp.*, 186 F.3d 1222, 1231 (10th Cir. 1999)); *Barrier v. Beaver*, 712 F.3d 231, 234 (6th Cir. 1983) ("There is authority for the view that the word 'mistake' as used in Rule 60(b)(1) encompasses any type of mistake or error on the part of the court, including judicial mistake as to applicable law.").   "Relief from a final judgment under Rule 60(b) is an

'extraordinary remedy that is granted only in exceptional circumstances.'" *McAlpin v. Lexington 76 Auto Truck Stop, Inc.*, 229 F.3d 491, 502-03 (6th Cir. 2000) (quoting, in part, *Dickerson v. Board of Educ. of Ford Heights.*, 32 F.3d 1114, 1116 (7th Cir.1994)).   "Accordingly, the party seeking relief under Rule 60(b) bears the burden of establishing the grounds for such relief by clear and convincing evidence." *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 454 (6th Cir. 2008).

The gist of JJA's argument in the Motion to Reconsider as follows.   In their summary judgment response, plaintiffs identified at least two[2] potential independent causes of the plane crash at issue.   In its reply to its summary judgment motion, JJA observed that plaintiffs made no attempt to distinguish between four potential causes of the plane crash.   Specifically, JJA stated:

> Importantly, Plaintiffs make no attempt to distinguish between the four as to their relative probability, and different parties are responsible for the different potential causes. [*Id.*] Such an offering of proof is insufficient to support a negligence claim against JJA under Kentucky law.  As has been the case for decades, a plaintiff may not recover when his injuries may have been caused by one of "several causes, for some of which the defendant is not responsible, and is equally consistent with no negligence as it is with negligence." *Davies Flying Serv., Inc. v. United States*, 114 F. Supp. 776, 779 (W.D. Ky. 1953) (citing other sources). A plaintiff must present evidence that tips the scale from "possibility to probability." *Pierce v. Cub Cadet Corp.*, No. 87-5936, 1989 U.S. App. LEXIS 14626 (6th Cir. May 9, 1989).[]  "[W]hen the probabilities are at best evenly balanced" between multiple possible causes, courts have an obligation to grant judgment in favor of defendants. *See Texaco, Inc. v. Standard*, 536 S.W.2d 136, 138 (Ky. 1975).   Plaintiffs have presented the Court with four

---

[2] JJA actually mentions four possible causes in its reply to the motion for summary judgment; however, in the Motion to Reconsider JJA argues that plaintiffs have identified "at least two possible independent causes," noting in a footnote, "Arguably, [p]laintiffs identified four independent causes, only one of which is related to JJA's actions." (DN 539-1, p. 7 n.2.)  Therefore, the Court will focus on the "two possible independent causes" identified by JJA in the Motion to Reconsider.

> alternative causes of this accident. Plaintiffs[*] opinion witnesses'
> testimony proves that JJA was not responsible for the first [] three
> of those four causes. Thus, four possible causes have been
> presented and no method has been provided for raising either of
> them from the realm of possibility into that of probability.
> Consequently, for this reason alone, JJA is entitled to summary
> judgment in its favor.

(DN 479, pp. 7-8.)

JJA argues – in the Motion to Reconsider – that the Court erred in not granting summary judgment to it on the basis of this argument.   More particularly, JJA argues that plaintiffs have identified at least two possible causes of the plane crash:   (1) negligent installation of the magneto; and (2) excessive vibrations.   JJA asserts that it can only be liable for excessive vibrations, and that George Durham, who installed the magneto, is liable if the installation was negligent.   (DN 539-1, p. 4.)   JJA argues that, under Kentucky law, when two independent causal factors are equally possible, the probable cause threshold required for an award of damages on a negligence claim has not been crossed and therefore summary judgment is due. (*Id*. at 3.)   JJA similarly states, "[W]hen [p]laintiffs claim that the aircraft's engine failed because of misinstallation of the magneto and excessive vibrations, each of which could have independently caused the accident, they are identifying two equally possible causes that stem from the actions of two different actors.   Such a scenario would leave the jury to speculate as to which cause applies.   This is not permitted under Kentucky law."   (Id. at 6.)   JJA cites no case law to directly support this proposition.   Instead, JJA relies heavily on, but without any attempt to make a factual analogy to, *In re Air Crash at Lexington*, 5:076-cv-316-KSF, 2008 WL 2704155 (E.D. Ky. June 27, 2008).

4

The Court will recount a brief version of the facts of that case.   In *In re Air Crash at Lexington*, Blue Grass Airport had two operating runways, Runway 22 and Runway 26, and was in the middle of a three-year construction project to create overrun areas on Runway 22. *Polehinke v. Jeppesen-Sanderson, Inc.*, 359 F. App'x 559, 2009 WL 4981683, at *1 (6th Cir. Dec. 22. 2009) (unpublished opinion).[3]   The plane attempted to take off on Runway 26, which was only 3,500 feet long; the plane became airborne but struck a berm and other obstacles before crashing.  *Id*.  James Polehinke, the first officer of Comair Flight 5191, was the sole survivor.  *Id*. Various groups of plaintiffs filed suit against Polehinke, and Polehinke filed third-party complaints against Jeppesen-Sanderson, Inc., alleging that the chart that it designed and manufactured for the Blue Grass Airport contained erroneous information about the taxiways and runways at the airport.  *In re Air Crash at Lexington*, 5:076-cv-316-KSF, 2008 WL 2704155, at *1.  Polehinke alleged that the breach of contract and negligence of Jeppesen in furnishing erroneous charts to Comair caused the crash of Comair Flight 5191.  *Id*.  Jeppesen moved for summary judgment on all claims against it, arguing, in part, that there was no evidence that any inaccuracy in the Jeppesen charts proximately caused the Comair accident.  *Id*.  The Court concluded that the evidence did not show that the chart was a probable cause of the crash.  *Id*. at *3.  Specifically, the Court found that there was no evidence that the pilot had the chart out or relied on it; the cockpit voice recording did not reflect reliance on the chart or that Polehinke was using it to assist the pilot during the taxi; Polehinke could not remember whether he or the pilot had the chart out and available or whether either had referenced it; and Polehinke did not testify that it was always his practice to review the chart.  *Id*.  Furthermore, the Court noted that it was

---

[3] Some of the facts have been obtained from the Sixth Circuit opinion affirming the district court's grant of summary judgment to defendant Jeppesen-Sanderson, Inc.

undisputed that the chart accurately depicted the taxiways and runways; what it failed to depict was that Taxiway Alpha was barricaded north of Runway 26. *Id*. at *4. The chart did show that a plane must cross Runway 26 in order to reach Runway 22, the runway that was supposed to be used. The pilot never crossed Runway 26, however, and instead attempted takeoff on Runway 26. *Id*.

The Court found that, absent evidence that the pilot or Polehinke were misled by the chart produced by Jeppesen, Polehinke's theory of causation was based only on speculation and conjecture regarding possible causes. *Id*. The Court further stated, "[I]f a party seeks to establish causation by circumstantial evidence, 'the evidence must be sufficient to tilt the balance from possibility to probability.'" *Id*. (quoting, in part, *Calhoun v. Honda Motor Co., Ltd*., 738 F.2d 126, 130 (6th Cir. 1984)). Citing *Calhoun*, the Court also observed that, where an accident could have resulted from any number of reasons, the plaintiff has failed to establish the necessary proximate cause. *Id*. The Court noted that plaintiffs failed to tilt the balance from possibility to probability on the issue of proximate cause. *Id*. The Court concluded that, because the "plaintiffs have failed to present significant probative evidence on the issue of causation," summary judgment should be granted in favor of Jeppesen." *Id*. at *5.

*In re Air Crash at Lexington* has not provided the *clear and convincing evidence* required for the Court to change its summary judgment decision. For one, JJA does not even discuss the facts of this case or any other case in its Motion to Reconsider, and *In re Air Crash at Lexington* was a mere footnote in its reply to the motion for summary judgment. Instead, JJA has cherry picked quotations from various cases to piece together its own view of Kentucky law, without attempting to factually analogize any of those cases to this case. Second, this appears to be more

like an attempt to take a second bite at the apple.  The Court has already found that "[b]ased on the testimony of Mr. Crouch and Mr. Hudson, as well as their experts, a rational jury could find for the Plaintiffs, and the evidence is not so one-sided that Defendant is entitled to judgment as a matter of law."  (DN 536, p. 4.)  The Court further stated that this "is not a case in which Plaintiffs have only speculative testimony to support their theory of the case."  (*Id*.)  In other words, unlike *In re Air Crash at Lexington*, at least at the summary judgment stage of the proceedings, there is a genuine issue of material fact as to whether JJA's actions, at least in part, caused the plane crash.  Third, JJA does not assert that evidence that the magneto was re-installed negligently using the wrong clamps and a magneto gasket that was too thick is speculative; rather, JJA asserts that it "is undisputable that George Durham removed and reinstalled the magneto that was on the aircraft at the time of the accident" and therefore it is not liable on that basis.  (DN 539-1, p. 6.)

Other cases cited by JJA provide no basis for relief either.  In *Texaco, Inc. v. Standard*, 536 S.W.2d 136 (Ct. App. Ky. 1975), the Kentucky Court of Appeals found that the trial court erred in not entering a directed verdict for Texaco.  The decedent used gasoline instead of kerosene to clean oil from an enclosed broach pit and an explosion ensued.  *Id*. at 137.  The only negligence alleged against Texaco was that it failed to label a tank of gasoline near the broach pit.  *Id*. at 138.  There was no proof as to how or where the decedent obtained the gasoline; there was no testimony as to what ignited the gasoline vapors.  *Id*.  In the absence of statute or regulation, the Court found that there was no duty of Texaco to label the gasoline tank, which it was leasing to the decedent's employer.  *Id*.

The pertinent facts[4] of *Davis Flying Serv., Inc. v. United States*, 114 F. Supp. 776 (W.D. Ky. 1953), *aff'd sub nom. Davies Flying Serv., Inc. v. United States*, 216 F.2d 104 (6th Cir. 1954) are as follows:

> Several witnesses who observed the plane in flight shortly before it fell saw a blue flame coming from it; others who appear to have observed it more closely immediately before it fell heard noises from it described as "back-firing and popping" and "sputtering" as it circled over their houses, followed by a burst of flame from the bottom, which illuminated the windows of the plane, as it proceeded above the trees and hilltops. According to Mrs. Otho Kern, it was "like a flash of lightning". It was noticed that immediately the engine appeared to stop or cut out and the plane instantly fell to the ground with a loud explosion and great flare of light when it struck. Since neither occupant of the plane survived the fall, no living witness is able to throw any light upon the proximate cause of it, nor is proof of the proximate cause supplied by either direct or circumstantial evidence. Whether the fall was due to the negligence of the pilot or to some functional failure of the essential operating mechanism of the plane, some of which, according to the testimony of plaintiff's mechanic H. W. Schuermeyer, had been the subject of previous complaint, or to some other fortuitous event which rendered the pilot helpless, remains an inscrutable mystery.

*Id.* at 778. The Court stated, "The most that can be said of the evidence is that it presents nothing more than circumstances upon which theories as to the cause of the tragedy may be multiplied, any one of which is as plausible as the other and all of which rest upon mere conjecture." *Id.* The Court further stated that "recovery of loss resulting from alleged negligence may not be awarded when the facts and circumstances disclosed show nothing more than that the loss for which compensation is sought may have been due to any one of several causes, for some of which the defendant is not responsible, and is equally as consistent with no negligence as it is with negligence." *Id.* at 779.

---

[4] This case involved an action brought under the Federal Tort Claims Act by the owner of an airplane who rented the airplane to the federal government; it also involved issues of bailment, which will not be discussed here.

8

These cases do not help JJA in this instance.  The most glaring difference is that Larry Crouch and Teddy Hudson survived the crash and will serve as witnesses.  Even beyond that, these cases do not help JJA for the same reasons that *In re Air Crash at Lexington* does not help JJA, *i.e.*, the Court has already found that this is not a case in which plaintiffs have only speculative testimony to support their theory of the case, and JJA has offered no clear and convincing evidence that the Court made a legal or factual error in its summary judgment decision.

In sum, from what the Court can gather, JJA is arguing that there is not sufficient evidence to show that its actions were the proximate cause of the crash at issue.   The Court has already found that there is a genuine issue of material fact at least with respect to plaintiffs' theory that JJA made a number of modifications to the plane engine that led to excessive vibrations, which, in turn, led to fatigue fractures in the magneto flanges.  (*See* DN 536, pp. 2-3.) There is no reason to disturb that decision.  The Court notes that the denial of JJA's summary judgment motion or the Motion to Reconsider in no way prevents JJA from moving for a direct verdict at trial if it believes that evidence presented at trial would not legally support a verdict against it.

## III.   CONCLUSION

For the foregoing reasons, John Jewell Aircraft, Inc.'s Motion to Reconsider (DN 539) is DENIED.


cc:  Counsel of record